Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/12/2019 09:07 AM CDT

In re Interest of Reality W., a child
under 18 years of age.
State of Nebraska, appellee, v.
Reality W., appellant.

___ N.W.2d ___

Filed April 12, 2019.    No. S-18-629.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Statutes: Judgments: Appeal and Error.** The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court.
3. **Statutes: Appeal and Error.** Appellate courts will adhere to the plain meaning of a statute absent a statutory indication to the contrary.
4. **Juvenile Courts: Parental Rights.** The foremost purpose and objective of the Nebraska Juvenile Code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law.
5. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

Appeal from the Separate Juvenile Court of Lancaster County: Roger J. Heideman, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Margene M. Timm for appellant.

John M. Ward, Deputy Lancaster County Attorney, and, on brief, Julie Mruz for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG JJ.

FUNKE, J.

Reality W. appeals from the order of the separate juvenile court of Lancaster County adjudicating her as being "habitually truant [from] school."[1] Reality argues that she has defenses to adjudication under Neb. Rev. Stat. §§ 79-209(2)(b) (Reissue 2014) and 43-276(2) (Reissue 2016). Because we do not find either statutory defense to be applicable based on the record, we affirm.

## BACKGROUND

On April 12, 2018, the State filed a petition alleging that Reality, then age 15, was habitually truant from school between September 1, 2017, and March 7, 2018. Reality, along with her mother, Marketa S., appeared before the court on May 8, 2018, and entered a denial of the allegations. The court held a formal adjudication hearing on June 18 at which all parties were present. Two employees of the Lincoln Public Schools were called by the State as witnesses to testify regarding the school district's attendance policy and practices, Reality's attendance record, and the steps that were taken to address Reality's attendance issues before referring the matter to the county attorney's office.

### SCHOOL'S POLICY AND PRACTICE

The State offered testimony from a school attendance technician. She explained that the school uses an administrative computer program called Synergy, which maintains student records, attendance records, and records of contacts made with students and parents. Synergy also contains a registry of addresses and telephone numbers for students and parents, information which parents report to the school district at the beginning of each school year.

---

[1] See Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2016).

The teachers use Synergy to record a student's attendance at the beginning of each class period. The Synergy program utilizes attendance codes for truancy, tardiness, parent-acknowledged absence, administrator or counselor meeting, medical, school activity, or illness. Absences for truancy and illness and parent-acknowledged absences are considered unexcused absences. Synergy generates and sends automated "[s]tage letters" to parents when a student accumulates 5, 10, 15, and 20 days of unexcused absences. In addition, Synergy sends an automated telephone call to parents on the day a student has an unexcused absence for one or more classes. The call is sent to the telephone number provided by the parents and stored by the school in Synergy.

The State also offered testimony from Lucas Varley, a school counselor who works with attendance issues. He testified that once a student accumulates 5 to 10 days of unexcused absences, Varley will make personal telephone calls to the student's parent for the purpose of scheduling a collaborative plan meeting. He calls the telephone number from Synergy that the parent has provided. He testified that when he calls a student's home, he identifies himself, explains that he is calling to set up a meeting to address the student's attendance issues, and leaves his contact information.

He testified that he makes three attempts to call a student's home to schedule a collaborative plan meeting with a parent. If a meeting has not been scheduled with a parent after the third telephone call, Varley attempts to schedule a meeting by preparing a letter that the school attendance technician sends to the home. If a parent is unwilling to answer or respond to the efforts to schedule a meeting, Varley will hold a collaborative plan meeting without the parent or guardian present.

During a collaborative plan meeting, the attendees discuss the student's barriers to attendance and possible resources to address the barriers. They do so while utilizing a collaborative plan report prepared by Lincoln Public Schools and a community resource letter provided by the Lancaster County

Attorney's office. If a parent or guardian attends the meeting, he or she will sign the collaborative plan report and receive a copy of the community resource letter. If a parent or guardian does not attend the meeting, the collaborative plan report and community resource letter are mailed to the parent or guardian. Varley will then again attempt to contact the parent or guardian after the meeting is held by sending a letter which explains that he would like to hold a meeting at the school and asks the parent or guardian to contact him immediately. Varley records his efforts to contact parents and guardians on a Synergy contact log, which was received into evidence; in addition, he records his efforts on a separate county contact log, which was received into evidence as a separate exhibit.

### Reality's Attendance Record

According to the Synergy attendance report received into evidence, between September 1, 2017, and March 7, 2018, Reality had unexcused absences in 274 class periods. Synergy converts periods into days by dividing the number of unexcused absences by the number of classes in which the student is enrolled. Reality was enrolled in 4 class periods per day during this time, and therefore, the 274 class periods of unexcused absences equated to 68½ days of unexcused absences. From this total, 67½ days were classified as truancies and 1 day was classified as a parent-acknowledged absence.

The court received into evidence additional Synergy records which indicated that "Stage one, two, three, [and] four letters" were sent to Reality's home on September 25, October 5 and 24, and November 1, 2017, respectively. In addition, Varley testified that he called Reality's home on December 5 and left a message; that he called Reality's home on December 19 and spoke with Marketa, confirming that the school had the correct telephone number for Reality's home, but Varley was unable to address the attendance issue with Marketa; and that he called Reality's home on December 21 and left another message.

After these attempts to schedule a meeting with Marketa were unsuccessful, Varley held a collaborative plan meeting with Reality on January 9, 2018, when he observed Reality in the school hallway attempting to skip class. Varley acknowledged that the meeting was spontaneous and that he did not attempt to call Marketa prior to the meeting. During the meeting, Varley and Reality discussed barriers contributing to Reality's unexcused absences, which included her schedule and transportation issues. Prior to the meeting, Reality already had her daily school schedule shortened from a full day of 7 periods to 4 periods and had an individual education plan in place. The school also provided Reality a bus pass to assist with her transportation issues. Varley offered Reality family and individual therapy, which she declined. Varley and Reality also discussed available community resources set forth in the community resource letter. Though Varley could not remember if he gave Reality a copy of the community resource letter at the meeting, he assumed that he did so. Varley and Reality signed the collaborative plan report.

The following day, January 10, 2018, the collaborative plan report and community resource letter were mailed to Marketa. The mailing of the plan and letter to Marketa was documented in both the Synergy contact log and the county contact log. Thereafter, Reality continued to amass unexcused absences. On January 17 and 29, Varley attempted to again meet with Reality during scheduled class periods, but his attempts were unsuccessful because she was truant.

### Adjudication and Order

On June 18, 2018, the court held a formal adjudication hearing on the State's petition. Following the hearing, the court entered an order adjudicating Reality under § 43-247(3)(b). The court found that the "[e]vidence establishes by proof beyond a reasonable doubt that [Reality] has been habitually truant." The court further found that "multiple attempts to schedule a collaborative plan meeting as required by [§] 79-209(2)(b) were

made by authorized school personnel with [Marketa] with no response from [her]." The court found that although the collaborative plan meeting took place without Marketa's presence, the school had fulfilled its requirements to document its efforts to conduct the meeting under § 79-209(3). The court concluded that Reality had no defense under § 79-209(3) to adjudication for habitual truancy. Lastly, the court found the evidence established that the county attorney made reasonable efforts to refer Reality and her family to community-based resources and that as a result, Reality had no defense to adjudication under § 43-276(2).

Reality perfected an appeal to this court.

## ASSIGNMENTS OF ERROR

Reality assigns that there is insufficient evidence the school met the requirements under § 70-209(2)(b) and that there is insufficient evidence the county attorney made reasonable efforts to refer her and her family to community-based resources prior to filing a petition, as required under § 43-276(2).

## STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[2] The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court.[3]

## ANALYSIS

Under the Nebraska Juvenile Code, a juvenile court may exercise jurisdiction over a juvenile who is habitually truant from school under § 43-247(3)(b). Although the juvenile code does not define "habitually truant," we have previously said that "truancy" is a word of common knowledge, and we

---

[2] *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 665 (2014); *In re Interest of Hla H.*, 25 Neb. App. 118, 903 N.W.2d 664 (2017).

[3] *In re Interest of Hla H., supra* note 2.

have referred to the dictionary definition of "'truant'" as being "'a pupil who stays away from school without permission.'"[4] We qualified this definition by stating that under Nebraska's compulsory attendance law, only school authorities have the authority to grant a juvenile permission to be absent from school.[5] We have held that the mere fact that a juvenile is not complying with the compulsory education statutes without being first excused by school authorities establishes truancy and grants the juvenile court jurisdiction under § 43-247(3)(b).[6] In *In re Interest of Samantha C.*,[7] we found that the fact that a juvenile had accrued 27 days of unexcused absences was sufficient to show that the juvenile was not compliant with compulsory education statutes and thereby established beyond a reasonable doubt the juvenile's status as being habitually truant under § 43-247(3)(b).

Reality's appeal does not challenge the sufficiency of the evidence to adjudicate her as habitually truant under § 43-247(3)(b). Instead, her appeal focuses on the availability of defenses to adjudication, whether the school had fulfilled the requirements under § 79-209(2) and (3), and whether the county attorney fulfilled the requirements under § 43-276(2) before filing the petition. We address each of Reality's claimed statutory defenses in turn.

### No Defense Under § 79-209

Reality contends that the school failed in its obligation to address barriers to attendance under § 79-209. Specifically, she argues that, pursuant to § 79-209(2)(b), as amended by 2014 Neb. Laws, L.B. 464, § 34, the school is required to hold a

---

[4] *In re Interest of K.S.*, 216 Neb. 926, 929, 346 N.W.2d 417, 419 (1984) (superseded by statute as stated in *In re Interest of Kevin K.*, 274 Neb. 678, 742 N.W.2d 767 (2007)).

[5] *Id*. See Neb. Rev. Stat. § 79-201(2) (Reissue 2014).

[6] *In re Interest of Samantha C., supra* note 2.

[7] *Id*.

collaborative plan meeting with at least a parent or guardian before referring the case to the county attorney. Because only Varley and Reality participated in the collaborative plan meeting and because Varley did not call Marketa on the date of the meeting to have her attend or participate by telephone, Reality suggests the school district did not meet its statutory duty. Section 79-209 provides, as pertinent here:

> (2) All school boards shall have a written policy . . . to address barriers to attendance. Such services shall include . . . :

> (b) One or more meetings between, at a minimum, a school attendance officer, a school social worker, or a school administrator or his or her designee, the person who has legal or actual charge or control of the child, and the child, when appropriate . . . .

> . . . .

> (3) The school may report to the county attorney . . . when the school has documented the efforts it has made as required by subsection (2) of this section that the collaborative plan to reduce barriers identified to improve regular attendance has not been successful and that the child has been absent more than twenty days per year. . . . *Failure by the school to document the efforts required by subsection (2) of this section is a defense to . . . adjudication for . . . habitual truancy under subdivision (3)(b) of section 43-247.*

(Emphasis supplied.)

It is true that the plain language of § 79-209(2)(b) requires that the school hold a meeting between a school official and a parent or guardian to address a juvenile's barriers to attendance. Section 79-209(2)(b) indicates that it may be appropriate to hold "[o]ne or more meetings." Here, it is undisputed that only one collaborative plan meeting took place and that Reality's parent or guardian did not attend the meeting. In addition, Varley testified that if a parent does not respond after he has made three attempts to contact the parent by telephone,

he typically makes another attempt to schedule a collaborative meeting with the parent by sending a letter. There is no evidence that the school sent Marketa a letter after the third telephone call prior to the meeting. Further, although the school attendance technician and Varley testified that Synergy sends an automated telephone call home on the evening that a student has had an unexcused class period, there was no specific testimony that these calls were in fact made to Marketa.

[3] Having acknowledged these evidentiary shortcomings, it is clear that Reality lacks a defense to adjudication under § 79-209, because the plain language of the statute does not provide that a parent's absence at the collaborative plan meeting is a defense to adjudication. Instead, § 79-209(3) provides that "[f]ailure by the school to document the efforts required by subsection (2) of this section is a defense to . . . adjudication for . . . habitual truancy under subdivision (3)(b) of section 43-247." We will adhere to the plain meaning of a statute absent a statutory indication to the contrary.[8] Therefore, a defense to adjudication under § 79-209 is available only if the school failed to document its efforts to address her barriers to attendance and improve her regular attendance, consistent with the school's attendance policy. In addition, § 79-209(3) requires the school to document that its efforts to improve regular attendance have been unsuccessful and that the child has been absent more than 20 days per year.

The record is replete with evidence that the school district documented its efforts to comply with § 79-209(2), reduce Reality's barriers to attendance, and improve her regular attendance. In addition, the school documented the fact that its efforts had not successfully improved Reality's regular attendance and that Reality had been absent more than 20 days per year.

The attendance report generated by Synergy shows that Reality's truancies began on September 1, 2017. According to

---

[8] *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016).

the normal practice described by the school employees, since Reality had three truancies on September 1, Marketa would have received an automated telephone call that day indicating that Reality had been truant. Even if we disregard the evidence concerning the automated calls, Marketa would have been aware of Reality's attendance issues as early as September 25, when she received the "Stage one" attendance letter. Reality then accumulated numerous truancies in a short amount of time; Marketa received "Stage one, two, three, [and] four letters" all within a 6-week period.

In addition, the school documented Varley's attempts to hold a collaborative plan meeting with Marketa. Varley first called Marketa on December 5, 2017, and left a message about setting up a meeting. Varley made two other related telephone calls to Marketa that month. Varley spoke with Marketa on the second call and left a message on the third call, but he was not successful in getting Marketa to participate in the meeting. Varley held the meeting with Reality on January 9, 2018. The record therefore shows that Marketa was aware of Reality's attendance issues 3 months in advance of the meeting and that Marketa had more than 1 month to return Varley's first call about setting up a meeting. Varley again sought Marketa's participation after he held the meeting with Reality. Both contact logs show that the collaborative plan report and community resource letter were mailed to Marketa on January 10. Reality continued to accumulate unexcused absences after the January 9 collaborative meeting. Varley twice attempted to again meet with Reality at a time he knew she should have been in class, but his attempts were unsuccessful because she was truant. By March, Reality had 68½ days of unexcused absences. The petition was not filed by the county attorney until April.

[4] In addition, the foremost purpose and objective of the juvenile code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental

relationship is proper under the law.[9] The goal of juvenile pro-ceedings is not to punish parents, but to protect children and promote their best interests.[10] With these purposes and objec-tives in mind, we must reject Reality's position that a parent's refusal to participate can forestall the processes designed to improve a juvenile's attendance under § 79-209(2). A par-ent's absenteeism cannot defeat the juvenile court's author-ity to promote and protect a juvenile's best interests under § 43-247(3)(b).

As indicated, the language of the defense that Reality asserts under § 79-209(3) states that "[f]ailure by the school to docu-ment the efforts required by subsection (2) of this section is a defense . . . ." Section 79-209(2) requires efforts to identify barriers to attendance and to improve regular attendance. The contact logs and consistent testimony from school employees prove that the school documented its efforts to hold a collab-orative plan meeting to fulfill requirements under § 79-209(2) and to secure Marketa's attendance at that meeting. The school documented the facts that its efforts to meet with Marketa were not successful and that Reality had over 20 days of unexcused absences. Marketa's decision not to participate does not negate the conclusion that the school documented the efforts required under § 79-209(2). Upon our de novo review, we agree with the juvenile court's conclusion that Reality does not have a defense to adjudication under § 79-209(3).

## No Defense Under § 43-276(2)

[5] Next, Reality argues she has a defense to adjudication under § 43-276(2), because there is insufficient evidence that the county attorney made reasonable efforts to refer her to community-based resources. In her argument, she asserts that the community resources letter provided by the county attorney should not have been received into evidence. However, Reality

---

[9] *In re Interest of Samantha C., supra* note 2.

[10] *Id.*

did not assign that the court erred in admitting the letter. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[11]

Reality's remaining arguments regarding her defense under § 43-276(2) are that Reality and Marketa never received the letter and that the letter by itself is not enough to establish that reasonable efforts were made. Section 43-276(2) provides:

> Prior to filing a petition alleging that a juvenile is a juvenile as described in subdivision (3)(b) of section 43-247, the county attorney shall make reasonable efforts to refer the juvenile and family to community-based resources available to address the juvenile's behaviors, provide crisis intervention, and maintain the juvenile safely in the home. Failure to describe the efforts required by this subsection shall be a defense to adjudication.

Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[12] Section 43-276(2) requires the county attorney to make reasonable efforts to refer the juvenile and family to community-based resources.

In the context of this case, the record shows that the county attorney's efforts are part of a coordinated effort with the school to refer a student and her family to community-based resources in order to improve regular attendance so that the filing of a petition in juvenile court may be avoided. The primary evidence of the county attorney's efforts to refer Reality and her family to community-based resources is the community resource letter attached to the collaborative plan report, which the court received as an exhibit.

The typewritten letter was addressed to the "Parent(s) or Guardian(s) of Reality [W.]" The letterhead indicated it was

---

[11] *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

[12] *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

from "Joe Kelly[,] Lancaster County Attorney," and it bore the seal of Lancaster County. The letter concluded with a signature block again indicating it was from "Joe Kelly[,] Lancaster County Attorney." The letter was signed by "Bruce J. Prenda[,] Chief Deputy/Juvenile Division[,] Lancaster County Attorney's Office."

In her brief, Reality asserts "there was no evidence that the community based resource letter was given or sent to [her] or [Marketa]."[13] However, the record disproves Reality's assertion. Although Varley could not definitively remember whether he provided Reality a copy of the letter during the meeting on January 9, 2018, he stated he assumed that he did, and he testified that he sent the letter to Reality's home the following day. Varley testified that he prepared the letter, but mistakenly dated it as January 10, 2017, which he acknowledged was a typographical error on his part. As discussed above, both the Synergy and county contact logs confirmed that the letter was mailed to Reality's home on January 10, 2018. In addition, there is evidence in the record that the letter was addressed to Reality's parents, was mailed to Marketa's address, and was mailed 3 months prior to the filing of the petition. There is no contrary evidence in the record to support Reality's assertion that she and Marketa did not receive the letter. As a result, based on the record, we conclude that the argument that Reality and her family did not receive the letter is without merit.

Reality also argues the community resource letter by itself does not satisfy the county attorney's responsibilities under § 43-276(2) to make reasonable efforts to refer the juvenile and family to community-based resources. However, the letter provides two different resources a parent may use to obtain information about programs to help students and families. First, the letter directs families to community resource guides

---

[13] Brief for appellant at 13.

found on websites for the Department of Health and Human Services, Lincoln Public Schools, and the Lancaster County Attorney's office. The letter states, "If you need help accessing any of those resources or determine that some other kind of assistance would be most beneficial to your family, we ask that you work closely with your school as part of the collaborative planning process." Second, the letter encourages the family to contact the truancy resource specialist at the "Lincoln/Lancaster County Human Services Office" in order to determine the best available resource to address the specific problem at hand. The letter provides the telephone number and office hours of the truancy resource specialist. As a result, Reality's argument that the letter from the county attorney failed to notify her and Marketa of the community-based resources is without merit.

## CONCLUSION

For the reasons stated above, we find Reality does not have a defense to adjudication under § 43-247(3)(b) for being habitually truant from school.

AFFIRMED.