IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF MIA T.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF MIA T., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

MIA T., APPELLANT.

Filed June 25, 2019.    No. A-18-1009.

Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Leigh A. Ellis for appellant.

Donald W. Kleine, Douglas County Attorney, Sarah Graham, and David Ceraso, Senior Certified Law Student, for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Mia T. appeals from the Douglas County Separate Juvenile Court's order adjudicating her as a juvenile for being habitually truant from school. On appeal, she contends that the juvenile court erred in finding that the State proved beyond a reasonable doubt she had missed more than 20 days of school and that the school properly provided and documented the remedial measures specifically outlined in Neb. Rev. Stat. § 79-209 (Reissue 2014) prior to referring the case to the county attorney. For the reasons stated below, we affirm.

- 1 -

## STATEMENT OF FACTS

In June 2018, the State filed a truancy petition alleging that Mia was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2016) for being habitually truant from school. Specifically, the State alleged that Mia had missed over 20 days of school in the previous school year. Mia, born in January 2001, was 17 years old when the action commenced. She lived with her mother, Corinna Hagberg, in Omaha, Nebraska, and attended high school at South High Magnet School (Magnet). An adjudication hearing was held in September 2018. The State presented testimony through two witnesses: Lori Kuhns, who served as Magnet's School Support Liaison during the relevant timeframe; and Kori Moran, a Community and Educational Liaison at the Douglas County Juvenile Assessment Center.

Kuhns testified that, during the 2017-18 school year, she was responsible for monitoring students' attendance. According to Kuhns, the Omaha Public School system utilizes "Infinite Campus" as its computerized system for tracking and recording attendance. She stated that student's classroom teachers regularly make attendance entries into the system at the beginning of each class period and the school's attendance secretary makes attendance entries into the system when parents call regarding student absences or when students arrive late or leave school early. Kuhns noted that Magnet's attendance policy is consistent with the Omaha Public Schools' attendance policy, that is, Magnet ordinarily sends notification letters to parents each time a student misses 5, 10, or 15 days of school. After a student misses 10 days of school, Magnet attempts to schedule a collaborative plan meeting with the student and the student's parents. After a student misses 15 days of school, the school sets a mandatory collaborative plan meeting with the student and the student's parent. When a student misses 20 days of school, the school sends a referral form to the Douglas County Attorney's Office in order to place the county attorney on notice of the student's habitual truancy. When the State filed the truancy petition in this case, Mia had missed over 24 days from school from August 17, 2017, to May 3, 2018, which absences were all unexcused. Mia's absences were a combination of both full-day and partial-day absences.

Kuhns testified that, when Mia missed her 5-day, 10-day, and 15-day absence milestones, the school sent absence notification letters to Hagberg in accordance with the attendance policy as outlined above. Kuhns testified that the letters were returned as undeliverable and the school never received proof of a changed mailing address from Hagberg. Kuhns specifically testified that maintaining an updated address with the school is the parent's responsibility. She testified that at or about the time the school sent the 10-day letter to Hagberg, the school provided a separate written letter to Mia for her to deliver to Hagberg which letter formally requested Hagberg's proof of address. After Mia accumulated 15 absences, Kuhns sent a letter which provided a specific time for a meeting to create a collaborative attendance improvement plan. School employees eventually held a collaborative plan meeting but neither Mia nor Hagberg were present. Following Mia and Hagberg's failure to attend the scheduled meeting, Kuhns sent an email to Hagberg. Kuhns testified that Hagberg failed to respond to any forms of communication from Magnet. After Mia reached 20 unexcused absences, Kuhns sent Hagberg a letter stating that she would be preparing a county attorney referral form. On or about May 4, 2018, Kuhns prepared and sent the referral

form to the Douglas County Attorney's Office, along with a printout of Mia's "Exact Daily Attendance Detail." Both documents were admitted into evidence at the adjudication hearing.

While cross-examining Kuhns, Mia's counsel attempted to impeach the reliability of the attendance records. In response to Mia's counsel, Kuhns testified that each time Mia was late to school, late to a class, or left class early, she was marked absent for a partial day. Kuhn acknowledged that within the comment section of the document entitled Mia's "Exact Daily Attendance Detail," the attendance secretary made notes documenting the reasons for Mia's partial attendance, such as noting late arrival times, but the calculated partial-day absences did not always match other calculated partial-day absences with similar entries. Nevertheless, Kuhns testified that she found the system that recorded absences and calculated the total number of absences to be trustworthy and she had no doubt as to its reliability.

Moran testified that, in connection with her job responsibilities as Community and Educational Liaison at the Douglas County Juvenile Assessment Center, she works with the county attorney and reviews truancy referrals to determine if truant juveniles are eligible for diversion. When a juvenile is eligible, Moran helps to set up diversion services. When provided with Mia's truancy referral form, Moran determined that Mia was not eligible for diversion due to her prior failure to complete truancy diversion and because she had recently ended probation for truancy.

Following the trial, the juvenile court found that the State had proven beyond a reasonable doubt that Mia had missed over 20 days of school and was habitually truant within the meaning of § 43-247(3)(b). Mia timely appeals.

## ASSIGNMENTS OF ERROR

Mia contends that the juvenile court erred in finding that the State proved beyond a reasonable doubt that she had missed more than 20 days of school and that the school had provided and documented the required remedial measures outlined in § 79-209 prior to referring the case to the county attorney.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Kane L. & Carter L.*, 299 Neb. 834, 910 N.W.2d 789 (2018). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court. *In re Interest of Reality W.*, 302 Neb. 878, 925 N.W.2d 355 (2019).

## ANALYSIS

Mia contends that the State failed to meet its burden of proof in two ways. She first argues that there was insufficient evidence to establish Mia missed more than 20 days of school and was habitually truant. Specifically, Mia claims that the inconsistencies in the calculation of missed partial days in the document entitled "Exact Daily Attendance Detail" attached to the County Attorney Referral Form demonstrate that the attendance record is unreliable. Second, she claims

that Magnet failed to document and provide Mia and Hagberg with the required remedial measures outlined in § 79-209(2).

The juvenile court has jurisdiction over any juvenile "who is habitually truant from home or school." § 43-247(3)(b). At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor under § 43-247(3)(b), the State must prove the allegations of the petition beyond a reasonable doubt. *In re Interest of Cole J.*, 26 Neb. App. 951, 925 N.W.2d 365 (2019).

According to Kuhns, and as documented in Mia's County Attorney Referral Form and "Exact Daily Attendance Detail," Mia missed over 24 unexcused days of school from August 17, 2017, to May 3, 2018. Kuhns testified that she had no doubt about the reliability of the attendance log. Mia did not provide any direct evidence that she missed less than 20 days of school. Instead, she attempts to rely on a few entries in her "Exact Daily Attendance Detail" which show small calculated portions of absences from different days which appear to have been calculated differently. For instance, the detail from November 28, 2017, and February 6, 2018, indicate that Mia checked in late to school at 7:50 a.m. both days but calculates an absence of .02 on November 28, 2017, and .11 on February 6, 2018.

Although there is no explanation for some of these small inconsistencies in tracking Mia's absences, the juvenile court found the documents establishing that Mia had missed more than 24 unexcused days of school to be credible and explicitly found Kuhns, who testified that the evidence was reliable, to be credible. We give weight to the juvenile court who observed the witnesses and accepted one version of the facts over another. Although we recognize some small discrepancies in the calculations of missed partial days of school, we find, beyond a reasonable doubt, that the evidence supports the fact that Mia missed over 20 days of school during the 2017 to 2018 school year and was habitually truant. Thus, this assignment of error fails.

Next, Mia contends that the school did not document and provide her with remedial measures required under § 79-209(2), and, therefore, § 79-209(3) provides her a defense against adjudication. Specifically, Mia argues that there was no communication by school officials with Hagberg regarding Mia's lack of attendance and that school officials failed to hold a collaborative plan meeting with Hagberg.

Pursuant to § 79-209(2), school districts are required to have an attendance policy which provides for services to be given to assist truant students including, but not limited to:

(a) Verbal or written communication by school officials with the person or persons who have legal or actual charge or control of any child; and

(b) One or more meetings between, at a minimum, a school attendance officer, a school social worker, or a school administrator or his or her designee, the person who has legal or actual charge or control of the child, and the child, when appropriate, to attempt to address the barriers to attendance. The result of the meeting or meetings shall be to develop a collaborative plan to reduce barriers identified to improve regular attendance. The plan shall consider, but not be limited to:

(i) Illness related to physical or behavioral health of the child;
(ii) Educational counseling;
(iii) Educational evaluation;
(iv) Referral to community agencies for economic services;

(v) Family or individual counseling; and

(vi) Assisting the family in working with other community services.

Section 79-209(3) provides:

The school may report to the county attorney of the county in which the person resides when the school has documented the efforts it has made as required by subsection (2) of this section that the collaborative plan to reduce barriers identified to improve regular attendance has not been successful and that the child has been absent more than twenty days per year. The school shall notify the child's family in writing prior to referring the child to the county attorney. Failure by the school to document the efforts required by subsection (2) of this section is a defense to prosecution under section 79-201 and adjudication for educational neglect under subdivision (3)(a) of section 43-247 and habitual truancy under subdivision (3)(b) of section 43-247. Illness that makes attendance impossible or impracticable shall not be the basis for referral to the county attorney.

Mia does not allege that Magnet's attendance policy fails to conform with § 79-209(2). Instead, Mia argues that, pursuant to § 79-209(3), Magnet's failure to document its efforts as required by § 79-209(2) is a defense to prosecution under § 43-247(3)(b). Specifically, Mia argues that the 5-day, 10-day, and 15-day letters sent to Hagberg were sent to the wrong address and the State failed to prove Magnet sent an email to Hagberg's proper email address. The thrust of Mia's argument stems from a notation in the system that Hagberg called Magnet at one point to determine whether a new address would be accessible for OPS-provided transportation. The specific entry provides:

Mom [Hagberg] called asking if transportation would be available from where they are moving (4905 S. 99th Street). SSL looked and address is not OPS and no OPS transportation is available. Mom states they will be there about a month and then move back into the area. Mom stated there was no MAT bus close. SSL suggested looking into transport service for that time.

In her brief, Mia argues:

Despite receiving this updated contact information, [Hagberg] confirmed the letters were sent to the family's prior address and were subsequently returned to the school. . . . The record establishes that the school knew that there was an issue with the minor child's mailing address, and yet the school made no affirmative efforts to correct this beyond sending mail to an address that they knew was outdated.

(Citations omitted.) Brief for appellant at 12.

Despite Mia's contention, Kuhns provided unrefuted testimony that parents are responsible for keeping an updated address and contact information in the school's system. Contrary to Mia's assertion, Hagberg's call to Magnet was intended to inquire into transportation availability for a future address where they would be moving for about a month. Hagberg did not request that the address be replaced within the system, identify when they would be moving, the full duration of

their stay, nor did she provide any further contact information. Accordingly, when Magnet began sending notices, it had no information on where to contact Hagberg other than that which was originally placed in the system. Additionally, neither Mia nor Hagberg provided any evidence as to what would have been a proper address when the letters were actually sent or that the email address the school used to email Hagberg was incorrect. In short, we find that Magnet properly complied with § 79-209(3) by notifying Hagberg of all requirements of § 79-209(2) by sending those notices to the street address and email address last provided by Hagberg to Magnet.

Mia next argues that, in addition to failing to provide written notices to the proper addresses, Magnet failed to hold a collaborative meeting with Mia and her family. As previously stated, Magnet held the collaborative meeting, but Hagberg and Mia failed to attend the meeting which Mia's counsel relates to inadequate notice.

The Nebraska Supreme Court has recently addressed what efforts the school is required to document in relation to a collaborative plan meeting under § 79-209(2)(b). In *In re Interest of Reality W.*, 302 Neb. 878, 925 N.W.2d 355 (2019), a school counselor called the student's parent repeatedly and talked with her, but was unsuccessful in getting the parent to attend a collaborative plan meeting. Eventually, the counselor held the meeting with the student without the parent present. Notwithstanding the school conducting the meeting without the student's parent present, the court held that pursuant to § 79-209(3), a defense to prosecution is limited to a school's failure to document its efforts to address the student's barriers to attendance in accordance with the school's attendance policy. *In re Interest of Reality W., supra*.

Here, the school documented its efforts to improve Mia's regular attendance in strict accordance with its attendance policy which attendance policy conforms to the relevant aspects of § 79-209(2). We find that Mia's second assignment of error fails.

CONCLUSION

Having found that the State met its burden of proof on the issue of habitual truancy and that Mia has no defense under § 79-209 to adjudication, we affirm.

AFFIRMED.