IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF M.S. & K.S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF M.S. AND K.S.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JEFFERY S., APPELLANT.

Filed July 23, 2019.    Nos. A-18-1045, A-18-1046.

Appeals from the County Court for Harlan County: TIMOTHY E. HOEFT, Judge. Affirmed.

Tana M. Fye, of Fye Law Office, for appellant.

Melodie T. Bellamy, Deputy Harlan County Attorney, for appellee.

Richard Calkins, guardian ad litem.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Jeffery S. appeals from the orders of the Harlan County Court, sitting in its capacity as a juvenile court, terminating his parental rights to his children, M.S. and K.S. The court found that termination of his parental rights was proper under Neb. Rev. Stat. § 43-292(2), (4), (7), and (9) (Reissue 2016) and that termination of his parental rights was in the children's best interests. Following our de novo review of the record, we affirm.

- 1 -

BACKGROUND

Jeffery is the father of K.S. born in August 2007 and M.S. born in June 2009 (collectively the children). The children have an older half sister (Jeffery is not her father). The children's mother and their half sister are not involved in this appeal, and we only discuss them as necessary to the circumstances of the present juvenile court case. The children were removed from the care of their parents on October 7, 2016, following a report of the sexual abuse of the half sister by the parents and a third individual. The children have remained in out-of-home placement since that time.

On October 7, 2016, the State filed petitions in the juvenile court alleging that the children came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) in that they lacked proper parental care by reason of the fault or habit of their parents; their parents neglected or refused to provide proper or necessary subsistence, education, or other care necessary for the children's health, morals or well-being; the parents were unable or neglected or refused to provide special care made necessary by the mental condition of the children; or that the children were in a situation that was injurious to their health or morals. The juvenile court granted motions for temporary custody filed by the State that same day and placed the children in the temporary care and custody of the Nebraska Department of Health and Human Services (Department). On November 10, 2017, the State filed amended juvenile petitions, adding allegations that the children were within the meaning of § 43-247(3)(a) due to Jeffery's actions in sexually assaulting the children's half sister and allowing others to sexually assault her, which placed the children at risk for harm. The court subsequently entered orders adjudicating the children as juveniles within the meaning of § 43-247(3)(a) with respect to the allegations in the amended petitions.

Following a hearing on December 21, 2016, the juvenile court found that the "[p]arents remain incarcerated and reasonable efforts and services would be impracti[ca]ble at this time." On January 9, 2017, the court entered temporary restraining orders, prohibiting the parents from contacting the children, and on November 13, the court found that reasonable efforts to preserve and reunify the family were not necessary with regard to Jeffery because there was sufficient evidence to prove that he had "subjected one of the four children to sexual abuse."

On March 9, 2017, the State filed motions to terminate Jeffery's parental rights as to M.S. and K.S. The State sought termination under § 43-292(2), (4), (5), and (9) and also alleged that termination of parental rights was in the children's best interests. The State subsequently filed amended termination motions, removing § 43-292(5) and adding § 43-292(7) as a ground for termination of Jeffery's parental rights.

A termination hearing was held before the juvenile court on June 20, 2018. At the hearing, the State offered and the juvenile court received, over Jeffery's objections, certified copies of his criminal convictions for first degree sexual assault of a child and felony child abuse and copies of the transcribed testimony of three of the witnesses who testified at the criminal bench trial. These exhibits detail the sexual assault of the half sister by both Jeffery and the third individual in late September 2016 and the mother's failure to protect her from this abuse. As discussed further below, Jeffery's criminal convictions, although on appeal at the time of the termination of parental rights trial, have now been upheld by the Nebraska Supreme Court; the details of the sexual assault

are recited in the Supreme Court's opinion, and we do not discuss them further in our present opinion. See *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019) (affirming convictions and sentences of imprisonment for 20 to 30 years for first degree sexual assault of child with mandatory minimum sentence of 15 years and with credit for time served of 199 days and concurrent term of imprisonment for 2 to 3 years for felony child abuse).

The State also offered testimony from the children's therapist, their current foster mother, and their Department case worker.

Kendra Hubbard, a licensed independent mental health practitioner, began working with the children in July 2017. She only had a couple of sessions with K.S., who was not benefitting from therapy due to her "communication barriers" (K.S. "has Fragile X" and "possibly autism"). Hubbard provided therapy for M.S. until February 2018, at which time Hubbard determined that M.S. no longer needed on-going treatment. Hubbard was aware that the parents had been convicted and incarcerated due to the sexual assault of one of the children's siblings. When M.S. first began seeing Hubbard, she was exhibiting signs of night terrors, some hyper-vigilance, and problems with concentration due to trauma while in the family home. According to Hubbard, the children experienced trauma when exposed to the sexual abuse of their half sister. Based upon M.S.' progress from July 2017 through February 2018, which Hubbard attributed in part to a structured living situation in her foster care placement, she testified that termination of Jeffery's parental rights would be in M.S.' best interests. Hubbard testified that it would be in K.S.' best interests to remain with her current foster family and that she would not "lose anything" if Jeffery's parental rights were terminated. When informed of the length of Jeffery's incarceration, Hubbard testified that she did not think it would be in the children's best interests "to remain in foster care without termination during the whole time period that [Jeffery] was being incarcerated."

Heather Clubb, the current foster mother for the children, testified that she was aware of the sexual abuse of the half sister while in the family home and that this sexual abuse resulted in the half sister having a baby. We note that neither Jeffery nor the third individual discussed in the criminal case is the father of this baby. According to Clubb, M.S. never misses her parents and frequently asks if she can be adopted. Clubb testified about the children's progress while living in Clubb's home and to her belief that it is in their best interests to remain there. Clubb also testified to her belief that it would be detrimental to the children to be returned to their parents.

Deitra Ludowese, a Department case worker for the children, testified briefly about her awareness of the circumstances that brought the children into the Department's custody and to her belief that the children were at risk of harm if they remained in the family home. Ludowese was aware of Jeffery's incarceration and the length of his sentence. Ludowese was asked if the Department provided "efforts or services" to Jeffery during the pendency of the case. She testified that she met with Jeffery twice at the beginning of the case; then the Department "requested no reasonable efforts," which was later granted by the juvenile court, so no case plan was ever prepared for Jeffery. Ludowese explained that the allegations with respect to the underlying sexual assault were the basis for the Department's "no reasonable efforts request." She testified that Jeffery's conduct was seriously detrimental to the health, welfare, and morals of both children due to the severity of the allegations of the sexual assault and Jeffery's failure to protect the half sister,

for whom he was the primary caregiver, and that termination of his parental rights would be in the children's best interests.

On October 3, 2018, the juvenile court entered orders, terminating Jeffery's parental rights to the children. The court found that the State had met its burden of proving the alleged statutory grounds for termination of Jeffery's parental rights and that termination of his parental rights would be in the children's best interests.

## ASSIGNMENTS OF ERROR

Jeffery asserts that the juvenile court erred in finding clear and convincing evidence (1) of statutory grounds to terminate his parental rights and (2) that termination of his parental rights was in the children's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Reality W.*, 302 Neb. 878, 925 N.W.2d 355 (2019). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Kane L. & Carter L.*, 299 Neb. 834, 910 N.W.2d 789 (2018).

## ANALYSIS

*Statutory Grounds for Termination.*

Jeffery asserts that the juvenile court erred in finding clear and convincing evidence of statutory grounds to terminate his parental rights under § 43-292(2), (4), (7), and (9).

In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Zachary D. & Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015). In this case, the juvenile court found grounds for termination of Jeffery's parental rights under § 43-292 (2), (4), (7), and (9). Upon our de novo review, we find that the State presented clear and convincing evidence to support termination of Jeffery's parental rights under § 43-292(7). Proof of one statutory ground is needed for termination, and the record clearly shows that statutory grounds for termination of his parental rights exist under § 43-292(7).

Section 43-292(7) provides grounds for termination when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." Jeffery acknowledges that § 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). However, he argues that when a parent "is making efforts towards reunification" and "has not been given a sufficient opportunity [for] compliance with a reunification plan, the mechanical nature of this ground cannot apply." Brief for appellant at 7. In making this argument, Jeffery misinterprets the analysis in *In re Interest*

*of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004), where in addressing a child's best interests, the court observed that the mechanical operation of the 15-month condition set forth in § 43-292(7) "serves the purpose of providing a reasonable timetable for parents to rehabilitate themselves" but that termination of parental rights is not in a child's best interests "when the record demonstrates that a parent is making efforts toward reunification and has not been given a sufficient opportunity for compliance with a reunification plan." In addition to establishing a statutory ground for termination of parental rights by clear and convincing evidence, the State must also show that termination is in the child's best interests and that the parent is unfit, and we address Jeffery's arguments regarding best interests below. See *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015).

The children were removed from Jeffery's care on October 7, 2016, and have been in an out-of-home placement continuously since that time. The amended motions to terminate Jeffery's parental rights were filed on June 20, 2018, at the start of the termination hearing, at which time the children had been in out-of-home placement for more than 20 months. Our de novo review of the record clearly and convincingly shows that grounds for termination of Jeffery's parental rights under § 43-292(7) were proven by sufficient evidence.

The juvenile court also found sufficient evidence to support termination under § 43-292(2), (4), and (9), but we do not need to consider whether termination of Jeffery's parental rights was proper pursuant to those subsections since any one of the 11 statutory grounds identified in § 43-292 can serve as the basis for the termination of parental rights when there is also clear and convincing evidence that termination is in the children's best interests. See *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012). However, we will consider evidence relevant to § 43-292(2), (4), and (9) in our analysis of best interests. Generally, when termination of parental rights is sought under subsections of § 43-292 other than subsection (7), the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse. *In re Interest of Mya C. et al.*, 23 Neb. App. 383, 872 N.W.2d 56 (2015).

*Best Interests.*

Jeffery asserts that the juvenile court erred in finding that termination of his parental rights was in the children's best interests.

In addition to proving a statutory ground, the State must show that termination is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests. *In re Interest of Jahon S., supra.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or

incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.*

Jeffery acknowledges that he was incarcerated during the pendency of the juvenile court proceedings and not allowed to have contact with the children, but he argues that the State did not present evidence that the relationship between him and the children was not beneficial to them. He also argues that termination of his parental rights was not in the children's best interests. We disagree.

Evidence was presented at the termination trial about Jeffery's criminal convictions for the sexual assault of the children's half sister, including transcriptions of portions of testimony presented at the criminal trial and copies of various pleadings and orders filed in the criminal case. At the time of the termination hearing, Jeffery's convictions were on appeal and thus not yet final. See *Shuck v. Jacob*, 250 Neb. 126, 548 N.W.2d 332 (1996) (conviction and sentence are not considered final judgments until after appeal, if there is indeed appeal). And, a criminal conviction being appealed cannot be used to invoke the doctrine of collateral estoppel as to the defendant's liability in a civil suit. See *id.* However, Jeffery's criminal convictions have since been affirmed by the Nebraska Supreme Court, making them final, and we take judicial notice of its opinion in the criminal case. See *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

A review of the evidence presented to the juvenile court in this case and of the Supreme Court's opinion in the criminal case shows that Jeffery was convicted of first degree sexual assault of a child and sentenced to imprisonment for 20 to 30 years with a mandatory minimum sentence of 15 years; he was also convicted of felony child abuse, for which he was given a concurrent sentence of 2 to 3 years. The children were ages 9 and almost 11 at the time of the termination trial, which occurred a little over 4 months after Jeffery's sentencing in the criminal case. Given Jeffery's mandatory minimum sentence, he will remain incarcerated during the rest of their minority. Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). Further, although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary. *Id.* In a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration. *Id.*

Here, contrary to Jeffery's assertions, the evidence shows that the relationship between Jeffery and the children was not beneficial to them. Jeffery's convictions resulted from his sexual assault of the children's mentally disabled half sister and from Jeffery's actions in allowing the third individual to sexually assault her as well. The children's therapist testified about the trauma M.S. and K.S. experienced as a result of their exposure to the sexual abuse of their half sister. She testified that termination of Jeffery's parental rights would be in M.S.' best interests, that it would be in K.S.' best interests to remain with her current foster family, and that it would not be in the children's best interests to remain in foster care placement for the duration of Jeffery's incarceration. The foster mother testified about the children's behaviors when they were first

placed in her care, their progress while in her home, and to her belief that it is in their best interests to remain there. The case worker testified that Jeffery's conduct with respect to the half sister was seriously detrimental to the health, welfare, and morals of both children and that termination of his parental rights would be in the children's best interests. We agree.

Jeffery clearly has not placed himself in a position to have the children returned to his care. While Jeffery argues that the State did not show that there were no reasonable alternatives to termination of his parental rights, the record proves otherwise. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). We conclude that the State showed by clear and convincing evidence that termination of Jeffery's parental rights was in the children's best interests.

## CONCLUSION

The juvenile court did not err by finding statutory grounds for termination of Jeffery's parental rights and that termination of his parental rights was in the children's best interests.

AFFIRMED.